**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ————————————————— ) | |
| DOMINIQUE C. MOTEN,                  ) | |
|                                      ) | Civil Action No. 24-cv-00168 (TSC) |
|                 Plaintiff,           ) | |
|                                      ) | |
|        v.                            ) | |
|                                      ) | |
| METROPOLITAN POLICE                  ) | |
| DEPARTMENT OF DISTRICT               ) | |
| OF COLUMBIA, et al.,                 ) | |
|                                      ) | |
|                                      ) | |
|                 Defendants.          ) | |
| ————————————————— ) | |

**MEMORANDUM OPINION**

This matter is before the court on Defendants' Motion to Dismiss or Alternatively for

Summary Judgment ("Mot."), ECF No. 11, and supporting Memorandum ("Mem."), ECF No.

11, filed by Defendants the Metropolitan Police Department of the District of Columbia

("MPD"),[1] Randy Griffin—the Commander of MPD's Evidence Control Division ("ECD"), and

---

[1]    As discussed in Defendants' Motion, *see* Mem. at 6–7, MPD "is a noncorporate department or body within the District of Columbia and is not suable as a separate entity," *Aleotti v. Baars*, 896 F. Supp. 1, 6 (D.D.C. 1995) (citing *Fields v. D.C. Dep't of Corrections*, 789 F. Supp. 20, 22 (D.D.C. 1992)), *aff'd*, 107 F.3d 922 (D.C. Cir. 1996) (per curiam); *see Miango v. Democratic Republic of the Congo*, 243 F. Supp. 3d 113, 125 (D.D.C. 2017) (finding that "an examination of the statute that creates MPD shows that it contains no provision allowing suit against it.") (citing D.C. Code § 5-101.01 *et seq.*).  However, the District of Columbia may be substituted as defendant by a court, which the court will do here for the purpose of adjudicating Defendants' Motion. *See Sampson v. D.C. Dep't of Corrections*, 20 F. Supp. 3d 282, 285 (D.D.C. 2014) ("When a plaintiff erroneously names as a defendant a District of Columbia agency instead of the District of Columbia itself, a court may substitute the District as a defendant for its agency.").

1

"other unknown police detectives."  For the reasons stated below, the court grants Defendants'

Motion to Dismiss.

## BACKGROUND

On July 29, 2022, Plaintiff Dominique C. Moten was charged in D.C. Superior Court by

criminal complaint with one count of assault with a dangerous weapon and one count of

possession of a firearm during a crime of violence.  *See U.S. v. Dominique C. Moten* ("*Moten I*"),

No. 2022-CF3-004322 (D.C. Super. Ct. filed Jul. 29, 2022). The United States superseded by

Criminal Information on December 5, 2022, and Moten pleaded guilty to one count of assault

with a dangerous weapon and one count of carrying a dangerous weapon outside the home.  *See*

*id*. at Plea Judgment Guilty (Dec. 5, 2022).  Moten was later sentenced to 36 months of

incarceration as to count one, and 12 months as to count two, to be served consecutively, with

three years of supervised release.  *See id*. at Sentence (Feb. 10, 2023).  While he was

incarcerated, in March 2023, MPD seized Moten's vehicle, a black Chevrolet Impala that MPD

believed to be connected to the crimes for which Moten was convicted.  *See* Complaint

("Compl."), ECF No. 1, at 3; Mem. at 2, 8–9.

On January 12, 2024, Moten, who is proceeding *pro se* and *in forma pauperis*, filed the

instant case in the U.S. District Court for the Western District of Virginia, challenging the

constitutionality of the seizure and MPD's retention of his vehicle, *see* Compl. at 1–5, and upon

review, the case was transferred to this District on January 19, 2024, "[b]ased on the location

where the alleged violations occurred," *see* Transfer Order, ECF No. 3; Case transferred in from

District of Virginia Western, ECF No. 4.   The matter was assigned to this court on February 15,

2024.

Moten sues Defendants for violations of 42 U.S.C. § 1983. *See* Compl at 1. He alleges that MPD "seized [his] vehicle without a warrant or notice of any kind," and that there was no "probable cause" because, according to Moten, the seized vehicle was not connected to the crimes of *Moten I*, and it was parked "5 to 6 blocks away" from the scene of the crimes. *See id.* at 3. He further alleges that he "was never provided with a hearing on probable cause for the detention of [his] seized vehicle by D.C. police within 72 hours of them seizing [his] vehicle." *See id.* at 1, 3. He claims he was not provided with notice of the seizure for "more than five months," and that the notice letter he ultimately received, sent by Griffin, required him to retrieve his vehicle in person at the precinct "within 10 days"—which was impossible due to his incarceration. *See id.* at 3. Moten's vehicle "has not been returned to the place of seizure," nor has he otherwise received compensation for the vehicle. *See id.* He demands $500,000 in damages. *See id.* at 4.

On September 8, 2025, Defendants filed the pending dipositive Motion, *see generally* Mot., and on September 9, 2025, the court issued an Order, ECF No. 12, directing Moten to respond to Defendants' Motion by no later than October 14, 2025, or risk dismissal or entry of judgment for Defendants without the benefit of his input, *see id.* at 1–3 (citing *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988) (per curiam); *Neal v. Kelly*, 963 F. 2d 453, 456–58 (D.C. Cir. 1992)). A copy of that Order was mailed to Moten at his current address of record that same day. Moten's deadline elapsed and he neither filed a response to the Motion, nor asked for additional time to comply. Indeed, Moten has not participated in this case since he filed it over two years ago. Notwithstanding, the D.C. Circuit has raised concerns about the use of D.C. Local Rule 7(b) to grant an unopposed motion to dismiss pursuant to Federal Rule 12(b)(6), *see*

*Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481–82 (D.C. Cir. 2016); therefore, the court will address the motions' merits.

## LEGAL STANDARD

### Failure to State a Claim

A plaintiff need only provide a short and plain statement of his claim showing that he is entitled to relief, Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The court "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam) (citation omitted), *cert. denied*, 568 U.S. 1088 (2013); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (same). But "the [C]ourt need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Id.* Nor must the court accept "a legal conclusion couched as a factual allegation," or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to state a claim. *Id.* Although a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson*, 551 U.S. at 94 (internal quotation marks and citation omitted), it still "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of

[defendant's] misconduct,'" *Atherton v. Dist. of Columbia Office of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678–79), *cert. denied*, 559 U.S. 1039 (2010).

In ruling upon a motion to dismiss for failure to state a claim, a court may consider the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which a court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.") (citing *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)), *aff'd*, 38 Fed. Appx. 4 (D.C. Cir. 2002) (per curiam); *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (finding that a court may consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss" without converting to summary judgment) (internal quotation marks omitted).

## DISCUSSION

### Claims Against John and Jane Doe Defendants

Moten sues "other unknown police detectives," *see* Compl. at 1, but the D.C. Local Rules require litigants who, as here, are proceeding *pro se*, to provide the name and full residence address or official address for each defendant within 30 days of filing a case, or suffer dismissal. *See* D.C. LCvR 5.1(c)(1). Moten has not complied with this requirement. Likewise, "there is no provision in the federal statutes or federal rules of civil procedure for the use of fictitious

defendants." *Armstrong v. Bureau of Prisons*, 976 F. Supp. 17, 23 (D.D.C. 1997) (citing *Saffron v. Wilson*, 70 F.R.D. 51, 56 (D.D.C. 1975)) (other citation omitted), *aff'd*, No. 97-5208, 1998 WL 65543 (D.C. Cir. Jan. 30, 1998) (per curiam).  Nor are there any particularized allegations in the Complaint against these "unknown" Defendants.  Accordingly, the claims against all the "other unknown police detectives" are dismissed.

### *Monell* Claims against MPD (the District)

Moten broadly cites to 42 U.S.C. § 1983, *see* Compl. at 1, under which a private cause of action may exist against a municipality or individual that, under color of state law, deprives an individual of a federal constitutional or statutory right, *see Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691–94 (1978); *Warren v. Dist. of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004).  A municipality may be held liable under § 1983 only "where the municipality itself causes the constitutional violation at issue," because municipalities cannot be held liable for the acts of its employees via respondeat superior.  *See Monell*, 436 U.S. at 694–95; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (same).

To state a claim for municipal liability under § 1983, a plaintiff must allege (1) a predicate constitutional violation, and (2) that a custom or policy of the municipality caused that violation.  *See Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  With respect to the first prong, Moten does not cite to any given constitutional amendment, and § 1983 "is not itself a source of substantive rights; rather, it is a method of vindicating federal rights conferred elsewhere."  *Melton v. Dist. of Columbia*, 85 F. Supp. 3d 183, 192 (D.D.C. 2015) (citing *Albright v. Oliver*, 510 U.S. 266, 269–70 (1994); *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  The court finds, however, that it is reasonably inferred that Moten is alleging an unreasonable search and seizure in violation of the Fourth Amendment, *see* U.S. Const. amend. IV, failure to provide

6

him with due process, namely, adequate notice and a hearing, in violation of the Fifth Amendment, *see* U.S. Const. amend. V, and unlawful taking without just compensation, also in violation of the Fifth Amendment, *see id*.

To satisfy the second prong, a plaintiff must allege that the municipality (1) "explicitly adopted the policy that was the moving force of the constitutional violation"; (2) "knowingly ignore[d] a practice that was consistent enough to constitute custom"; or (3) failed to "respond[ ] to a need . . . in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations." *Warren*, 353 F.3d at 39 (citations and internal quotation marks omitted). A plaintiff may also succeed by alleging that an authorized municipal policymaker made a one-time decision that resulted in the alleged constitutional deprivation. *See Singletary v. District of Columbia*, 766 F.3d 66, 73 (D.C. Cir. 2014), *cert. denied*, 575 U.S. 914 (2015). Put differently, "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); *see Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985) (requiring a plaintiff to show a course deliberately pursued by the city establishing an affirmative link between the city's policy and the alleged constitutional violation).

Moten has made no factual allegations, let alone *plausible* allegations, to support a municipal liability claim under any of these four approaches. Moten does not describe, specify, or even hint at any MPD or District policy or practice that caused the alleged predicate constitutional violations, which necessitates dismissal of his § 1983 claims against the MPD and the District. *See Collington v. Dist. of Columbia*, 828 F. Supp. 2d 210, 215 (D.D.C. 2011)

("Regardless of the circumstances under which plaintiff's money was seized, the complaint sets forth no factual allegations regarding the existence and enforcement of a municipal policy, custom or practice that directly caused a violation of his Fifth Amendment right to due process. This pleading defect is fatal, and plaintiff's sole federal claim will be dismissed.") (fn. omitted).

### Official Capacity Claims against Griffin

Any intended claims against Griffin in his official capacity are redundant.  A suit under § 1983 against a municipal official in his official capacity is "equivalent to a suit against the municipality itself."  *Atchinson v. Dist. of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)).  In other words, the suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."  *Monell*, 436 U.S. at 690 n.55.  "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is . . . to be treated as a suit against the entity." *Graham*, 473 at 166; *see id*. at 167 n.14 ("There is no longer a need to bring official-capacity actions against local government officials.").  Federal courts, with little to no exception, dismiss "corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources." *Robinson v. Dist. of Columbia*, 403 F. Supp. 2d 39, 49 (D.D.C. 2005) (collecting cases).  Accordingly, insofar as Moten sues Griffin in his official capacity, those claims are dismissed.

### Individual Capacity Claims against Griffin

Because vicarious liability is inapplicable to § 1983 suits, to establish an individual capacity claim, a plaintiff must plead that an official, through his own personal involvement, violated the Constitution. *See Iqbal*, 556 U.S. at 676.  "Only those who cause a violation of a

right secured by the Constitution are liable." *Elkins v. Dist. of Columbia*, 690 F.3d 554, 564 (D.C. Cir. 2012) (citing *Iqbal*, 556 U.S. at 676).

Here, the Complaint does not indicate that Griffin (or any other Defendant) is sued in an individual capacity. The court then must assess the "'course of proceedings' to determine if Moten has sufficiently implied an individual capacity claim. *See Daskalea v. Dist. of Columbia*, 227 F.3d 433, 448 (D.C. Cir. 2000) (quoting *Hafer v. Melo*, 502 U.S. 21, 24 n.* (1991)). The allegations against Griffin are skeletal, at best, and Moten refers frequently to the generalized wrongs of the "D.C. police," *see* Compl. at 3–4, suggesting that Moten views Griffin "and the District as interchangeable," undermining any implication of an individual capacity claim, *see Daskalea*, 227 F.3d at 448. Nor does the Complaint "seek to hold the defendants jointly and severally liable, a formulation that might have given some indication of an intention to sue" Griffin in an individual capacity. *See id*. Assuming *arguendo* Moten intended to sue Griffin personally, he has nonetheless failed to state a claim.

### A. Fourth Amendment Claims

Moten's Fourth Amendment claims fail categorically at the first element—personal involvement. There is no suggestion that Griffin was involved whatsoever in the actual search and seizure of Moten's vehicle. Accordingly, any individual capacity claims under the Fourth Amendment are dismissed. *See Jibril v. Mayorkas*, 101 F.4th 857, 871 (D.C. Cir. 2024) (affirming dismissal and finding that plaintiff did not properly raise any individual capacity claims because the amended complaint did "not name any defendants in their individual capacities, nor d[id] it allege facts indicating that any of the defendant agency heads personally carried out the allegedly unlawful searches."), *cert. denied*, 145 S.Ct. 550 (2024); *Elkins v. Dist. of Columbia*, 610 F. Supp. 2d 52, 65 (D.D.C. 2009) (finding that only individual defendants who

were personally involved in a seizure can be liable and that a "§ 1983 action cannot be maintained against an official in his personal capacity if the official was not personally involved in the decisions affecting the plaintiff's constitutional rights.") (citing *Brown v. Dist. of Columbia*, 514 F.3d 1279, 1285 (D.C. Cir. 2008)) (other citations and fn. omitted), *aff'd*, 690 F.3d 554 (D.C. Cir. 2012).

### B. Fifth Amendment Claims

As to his Fifth Amendment claims, Moten implies that he was denied due process due to lack of timely notice, and opportunity to be heard within 72 hours, and that as a result, he suffered an unlawful taking of his vehicle without just compensation. *See* Compl. at 4. Any supporting allegations specific to Griffin arise from his purported late issuance of the notice letter, which Moten maintains was issued "more than five months" after his vehicle was seized, requiring him "come get [his] vehicle within 10 days, while knowing full well that [Moten] was incarcerated at USP-Lee[,]" thus depriving him of the opportunity to reclaim his vehicle. *See id*. at 3–4.

Defendants attach a copy of this notice letter, which largely contradicts Moten's conclusory assertions. *See* Mot. Exhibit A (Undated Notice of Property Release) ("Not. Ltr."), ECF No. 11-4. The letter is undated, but contrary to Moten's allegations, he was not required to *retrieve* his vehicle within ten days; rather, it directed him to *respond to the letter* within ten days "if he was interested in retrieving his property." *See* Not. Ltr. at 1. The letter also advised that, if Moten could not appear in person at the Fourth Patrol District to repossess his vehicle, he could send a third party on his behalf, so long as the third party presented identification and a notarized authorization letter from Moten. It also explicitly advised that, "if the property [was] not claimed," the vehicle would face disposal under Title 5 of the D.C. Code. *See id*.

Notably, the notice letter is a template agency form, in which Moten's name and claim number are copied into existing fields. *See id.* at 1. As head of the ECD, Griffin's name and official title are listed at the bottom of the letter; however, it was not signed by Griffin, and there is no indication that it was, in fact, authored by him. *See id.* This blank block signature field is not enough to demonstrate that Griffin "played an individual role . . . or that he personally deprived [Moten] of his Fifth Amendment rights." *See Smith v. Dist. of Columbia*, 149 F. Supp. 3d 128, 133 (D.D.C. 2015) (dismissing § 1983 individual capacity claims where the plaintiff failed to allege that the warden of the D.C. jail caused the harm alleged "through [his] own individual actions.") (quoting *Iqbal*, 556 U.S. at 676); *see also Lyles v. U.S. Marshals Serv.*, 301 F. Supp. 3d 32, 41 (D.D.C. 2018) (finding that, just because the name and title of the defendant U.S. Marshal appeared on a writ of restitution, that fact alone did not establish that he "was present during or participated in" the plaintiff's alleged unconstitutional eviction), *aff'd sub nom. Lyles v. Hughes*, No. 18-5106, 2019 WL 1244575 (D.C. Cir. Mar. 1, 2019) (per curiam). This pleading omission is fatal to *any* intended Fifth Amendment individual capacity claim against Griffin.

Furthermore, even if Moten's allegations against Griffin were more particularized, he has also failed at the second element —to sufficiently allege that he was unconstitutionally deprived of adequate notice, a hearing, or his property. Once seized, Moten's vehicle was categorized by MPD as "Prisoners' Property," which is "generally held at the arresting officer's unit for ninety days. After ninety days, the property is transferred to Evidence Control where it is" is either retrieved by application of the owner, or "disposed of in accordance with provisions of Title 5 of the D.C. Code," i.e., "the Property Clerk Statute," under which abandoned property is managed and discharged by MPD, *see* D.C. Code § 5–119.01 *et seq*.; *see also* Mem. at 4, 10; Not. Ltr.;

MPD Evidence Control Division, https://mpdc.dc.gov/page/evidence-control-divsion (last visited Feb. 9, 2026);[2] MPD General Order 601.1, Sec. II(G); *Wilson v. United States*, 424 A.2d 130, 132–33 (D.C. 1980) (explaining that § 5–119 *et seq.*, previously codified at § 4–151 *et seq.*, is "designed to authorize the police property clerk to return property *upon application* by a rightful claimant") (emphasis added).

With respect to notice, Moten acknowledges that he, in fact, received the notice letter. *See* Compl. at 3. The Supreme Court has declined to specify when, exactly, notice must be given following a property seizure, but due process does not require that such notice to be issued immediately. *See Jenkins v. Dist. of Columbia*, No. 16–cv–118, 2017 WL 6211103, at *5 (D.D.C. Mar. 28, 2025) (quoting *City of West Covina v. Perkins*, 525 U.S. 234, 240 (1999)), *appeal dismissed*, No. 17–7072, 2017 WL 6553635 (D.C. Cir. Nov. 30, 2017). Instead, due process requires only that the notice shall provide a reasonable time to stake a claim. *See id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Here, the notice letter apprised Moten that (1) his vehicle was still in MPD's possession; (2) a third-party could appear on his behalf; and (3) MPD had not yet begun proceedings under Title 5, which notably, includes at least a 45-day challenge window pursuant to D.C. Code § 5–119.10(a)(1)(B). *See* Not. Ltr. Given those facts, even if the letter was late-issued, and "[a]lthough a municipality's adherence to its own procedural rules is certainly desirable, every deviation from such procedures cannot be viewed as a federal constitutional violation." *See Brandon v. D.C. Bd. of Parole*, 823 F.2d 644, 651 (D.C. Cir. 1987) (finding that plaintiff's

---

[2]    The court may take judicial notice of information from official public websites of government agencies. *See Cannon v. Dist. of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013).

"claims alleged, at most, a violation of District of Columbia law[,]" and rejecting his "attempts to transform his state law claim into a federal court action by dressing it in the verbiage of due process[.]").

With respect to a hearing, Moten does not point to any authority that entitles him a hearing within 72 hours of a property seizure. He may be mistakenly relying on the requirement that a defendant receive a pre-trial *detention hearing* within three days, pursuant to D.C. Code § 23-1322(d)(1), but that statute is inapplicable here. In any event, Title 5 does not provide for such a hearing, *see* D.C. Code § 5–119.10, and generally, due process "does not require a prompt hearing, in addition to the relief available under Superior Court Rule 41(g), for individuals to challenge the seizure and retention of their vehicles" when seized and retained in connection with criminal proceedings, *see Jenkins*, 2017 WL 6211103, at \*4–5 (citing *Baird v. Holton*, 806 F. Supp. 2d 53, 58 n.5 (D.D.C. 2011)) (other citations omitted).

Indeed, the D.C. Court of Appeals, adopting the same position as the D.C. Circuit, has specifically held that a criminal trial court bears ancillary jurisdiction, even after the criminal proceedings have concluded, to rule on a post-conviction motion to return property pursuant to Superior Court Rule of Criminal Procedure 41(g). *See Wilson*, 424 A.2d at 132 (adopting *U.S. v. Wilson*, 540 F.2d 1100, 1104 (D.C. Cir. 1976)). In *Wilson*, the D.C. Court of Appeals expressly rejected an argument that Title 5 was intended to deprive the Superior Court of subject matter and personal jurisdiction over such a motion for return of property, and found that the judge "who tried the case," should hear the motion because he was already "familiar with the facts and circumstances of the case . . . [by] taking the plea and in pronouncing [the] sentence[,]" *id.* at 132–33 (quoting *Wilson*, 540 F.2d at 1104; *U.S. v. LaFatch*, 565 F.2d 81, 83 (6th Cir. 1977) ("[t]he interests of judicial efficiency dictate that the problem should be resolved by the criminal

trial court."); citing *U.S. v. Ortega*, 450 F. Supp. 211, 212 (S.D.N.Y. 1978)).  Given this clear

precedent, insofar as Moten desired a hearing, it was his onus to file a Rule 41(g) motion in

*Moten I.  See Jenkins*, 2017 WL 6211103, at \*5.

Finally, even if Moten had adequately alleged Griffin's personal involvement in support

of his unjust takings claim, the Takings Clause provides that private property shall not "be taken

for *public* use without just compensation.'" *AmeriSource Corp. v. United States*, 525 F.3d 1149,

1152 (Fed. Cir. 2008) (quoting U.S. Const. Amend. V) (emphasis added), *cert. denied*, 556 U.S.

1126 (2009).  It "does not entitle all aggrieved owners to recompense, only those whose property

has been taken for a public use."  *Id*.  To that same end, property "seized and retained pursuant to

the police power, is not taken for a 'public use' in the context of the Takings Clause[,]" and

therefore does not entitle its owner to compensation.  *See Tate v. Dist. of Columbia*, 601 F. Supp.

2d 132, 136 (D.D.C. 2009) (finding that MPD's seizure of the plaintiff's vehicle due to traffic

violations, ultimately declared abandoned and sold at auction, was undertaken pursuant to the

District's police power, and thus did not constitute compensable taking, even if vehicle was sold

too early and its value far exceeded value of tickets, fees, penalties, cost of towing and storing,

and auction expenses) (quoting *AmeriSource*, 525 F.3d at 1153) (internal quotation marks

omitted), *aff'd in relevant part*, 627 F.3d 904 (D.C. Cir. 2010), *cert. denied*, 563 U.S. 980

(2011); *see also Nicholas v. U.S. Secret Service*, No. 18-0606, 2020 WL 2571520, at \*1 (D.D.C.

May 21, 2020) (dismissing for failure to state a § 1983 claim under the Takings Clause where the

plaintiff's money was seized in association with his arrest and later forfeited).

In sum, Moten has not sufficiently pleaded that Griffin was personally responsible for

any alleged Fifth Amendment violations, and even if he had so alleged, he has not stated an

14

actionable constitutional violation thereunder.  As a result, any intended Fifth Amendment individual capacity claims are dismissed.

## CONCLUSION

For all of these reasons, Defendants' Motion to Dismiss, ECF No. 11, is granted, and this case is dismissed in full pursuant to Federal Rule 12(b)(6).  A separate Order will issue.

Date:  April 8, 2026

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge